**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

**DONNA SPINO
LUCIEN SPINO**

      **VS**                                        **20-cv-123-JJM-LDA**

**RUSHMORE LOAN MANAGEMENT SERVICES, LLC
MTGLQ INVESTORS, L.P.**

## AMENDED COMPLAINT

Plaintiffs by their attorney, complain of Defendants as follows:

1. Plaintiffs Donna Spino ("Donna") and Lucien Spino ("Lucien") are residents of the State of Rhode Island with an address of  16 Red Chimney Drive, Lincoln, Rhode Island.

2. This Court has jurisdiction because there is diversity of jurisdiction and the value of the mortgage and property  is more than $75,000.00.

3. This Court also has jurisdiction pursuant to the provisions of the Fair Debt Collection Practices Act, a Federal Statute.

4. The Plaintiffs own the property located at 16 Red Chimney Drive, Lincoln, Rhode Island.

5. Plaintiffs ("Borrowers") executed a Loan Agreement to Beneficial Rhode Island, Inc. ("Beneficial") on September 25, 2007.

1

6.      This loan agreement was not made for a specific amount payable to Beneficial or to bearer.

7.      On September 25, 2007 Plaintiffs executed a mortgage to   to Beneficial Rhode Island, Inc. to secure the Loan Agreement.

8.      A copy of the mortgage is attached as Exhibit B.

9.      Defendant, MTGLQ Investors, LP ("MTGLQ") is a Limited Partnership, which  organized under the laws of the State of Delaware on December 29, 1993.

10.     The General Partner of MTGLQ is MLQ, LLC.

11.     MTGLQ in its filing with the Rhode Island Secretary of State has declared that its primary business in Rhode Island is as a passive debt buyer and purchaser of closed loans on the secondary market

12.     Defendant, Rushmore Loan Management Services, LLC ("Rushmore") is a Limited Liability Company organized under the laws of Delaware.

13.     Defendant, Rushmore is a loan servicer and is the loan servicer for the Plaintiffs' mortgage.

14.     Orlans, PC ("Orlans"), is a Law Firm, which on behalf of Rushmore and MTGLQ, on   January 30, 2020 scheduled a foreclosure sale for Plaintiffs' home on March 24, 2020 at 10:00 AM.

## COUNT I

**COMPLAINT FOR DECLARATORY JUDGMENT THAT THE LOAN AGREEMENT IS NOT A NEGOTIABLE INSTRUMENT AND THAT MTGLQ INVESTORSL LP IS NOT THE OWNER OF THE LOAN AGREEMENT OR THE AGENT FOR THE OWNER OF THE LOAN AGREEMENT**

15.    Paragraphs 1-14 are incorporated by reference.

16.    This Court possesses the authority to issue Declaratory Judgments.

17.    The Plaintiffs' Loan Agreement to Beneficial Rhode Island has not been endorsed.

18.    This Loan Agreement was not a negotiable instrument.

19.    As a non-negotiable instrument, the obligation of the Plaintiff remains owned by Beneficial Rhode Island, Inc. and there has not been any demonstration that this Loan Agreement has been conveyed by contract to each of the entities which may have claimed ownership interest in this Loan agreement.

20.    As a result, MTGLQ is not the owner of the note or the agent for the owner of the note and has no interest in the Loan Agreement

21.    This Loan Agreement does  not meet the criteria for a negotiable instrument pursuant to R.I.G.L 6A-3-104.

22.    Specifically it made numerous undertakings other than the promise to make payments of money or to provide for acceleration or to secure collateral.

23.    Specifically this Loan Agreement stated the following non-monetary undertaking which made it not a negotiable instrument:

Assumption: Someone buying your home cannot assume the remainder of the mortgage on the original terms.

24.     The Settlement Statement was incorporated by reference to the Loan agreement , which resulted in this Loan Agreement not qualifying as  an Article 3 negotiable instrument:

The Settlement Statement provides you disbursements and the itemization of the Amount Financed.

25.     This Loan Agreement also required the Plaintiffs to provide title insurance an additional undertaking which rendered it not a negotiable instrument:

Title Insurance
Title insurance on the real property security is required, naming us as a loss payee. You must purchase title insurance or its local equivalent protecting our lien on the real property as a condition to obtaining your loan. You may purchase title insurance from any title insurance provider you choose that we reasonably believe provides sufficient financial protection to us. You request such title insurance and authorize us to deduct the costs of the title insurance from your loan proceeds in order to pay the title insurance provider.

26.     This loan agreement also required the Plaintiffs to  promise to pay

additional charges not related to the principal, interest or escrow, thus rendering it not a negotiable instrument:

You agree to the terms of this agreement and promise to pay us the principal (Amount Financed plus prepaid finance charges consisting of Origination Fee/Points) plus interest which is computed at a rate of 10.340% (the "Contract Rate"). You agree to pay us in monthly installments as stated in the Payments provision of this agreement. You also agree to pay us: (a) other charges as provided in this agreement; **(b) credit insurance charges, if any; (c) collection costs permitted by applicable law, including reasonable attorneys' fees otherwise due under your Mortgage (d) any other charges reflected your settlement statement.**

Additional Charges
You agree to pay any amounts actually incurred by us for services rendered in connection with the opening and servicing of your loan, as allowed by law. These amounts may include fees for appraisals, title examination, title insurance or its local equivalent, fees and taxes paid to public officials in connection with recording, releasing or satisfying the Mortgage and other taxes as shown in the Settlement Statement incorporated herein by this reference. You also agree to pay any other amounts incurred by us in connection with he servicing of your loan including any amounts that we may (but need not) pay or that are otherwise due under the Mortgage, incorporated herein by this reference.

27.     Due to this language, this Loan Agreement required other documents to be reviewed to determine the amount owed under this agreement and other agreements and obligations incorporated by reference in this agreement.

28      This Loan Agreement also provided that the Plaintiffs promised and agreed to additional terms, which rendered it not a negotiable instrument:

About Our Relationship

Exchange of Information
You understand and agree that we will call you from time to time to discuss your financial needs any loan products that may be of interest to you as may be permitted by applicable law. For more information regarding our privacy practices, please refer to our Privacy Statement, which is included with your loan documents. You agree that the Department of Motor Vehicles (or your state's equivalent of such department) may release your residence address to us, should it become necessary to locate you.

Credit Bureau Reporting
If you fail to fulfill the terms of your loan, a negative report reflecting on your credit record may be submitted to a Credit Reporting Agency.

Telephone Monitoring
You agree that we may listen to and/or record telephone calls between you and our representatives for quality assurance purposes.

Insurance
Credit insurance is optional. Any applicable insurance disclosures are included with this agreement and are incorporated herein by this reference.

29.    This loan agreement was also non-negotiable because it incorporated by reference provisions of Rhode Island law, which governed its terms and conditions:

Applicable Law
The terms and conditions of this agreement will be governed by Chapter 14.1, Title 19 of the General Laws of Rhode Island, entitled "Lenders & Loan Brokers."

30.    This Loan Agreement did not constitute a negotiable instrument in conformity with the definition set forth in R.I.G.L 6A-3-104, which states:

6

**6A-3-104. Negotiable instrument.**

(a) Except as provided in subsections (c) and (d), "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:

(1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;

(2) Is payable on demand or at a definite time; and

(3) **Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money**, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

31.    All the additional undertakings in this Loan Agreement did not qualify it as a Negotiable Instrument under UCC 3-104.

32.    This loan agreement did not specify an actual amount which the Borrowers promised to pay.

33.    Instead it stated the amount financed of $466,488.44, which was not the same amount as indicated in the mortgage as $478,988.44.

34.    It did not make the Loan Agreement payable to the Order of Beneficial Rhode Island, Inc.

35.    The Loan Agreement thus was not a negotiable instrument and could not be transferred to  MTGLQ by an endorsement pursuant to Article 3 of the Uniform Commercial Code.

36.     Instead it had to be transferred pursuant to Article 9 of the UCC or by contract with each change of ownership requiring documentation indicating the sales contract, an identification that the Loan Agreement was included in that sales contract and proof of consideration.

376.   The transfer of non-negotiable promissory notes is controlled by R.I.G.L 6A-9-109(a)(3) which provides:

**6A-9-109. Scope.**

(a) *General scope of chapter.* Except as otherwise provided in subsections (c) and (d), this chapter applies to:

(1) A transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract;

(2) An agricultural lien;

(3) A sale of accounts, chattel paper, payment intangibles, or promissory notes;

38.     Due to the non-negotiable nature of the Loan Agreement, MTGLQ could not enforce any obligations under the note and exercise the statutory power of sale.

39.     As a result MTGLQ has no ownership interest in the Loan Agreement.

40.     Plaintiff has incurred attorney fees for the prosecution of this action.

Wherefore, Plaintiff demands that this Court issue a Declaratory Judgment declaring:

8

1. The Loan Agreement executed by the Plaintiffs is not a negotiable instrument.

2. That any endorsement or allonge related to this Loan Agreement did not convey any rights in this instrument or the obligation of Plaintiffs to MTGLQ.

3. That MTGLQ is not the owner of the Loan Agreement or the agent for the owner of the Loan Agreement.

4. That MTGLQ lacked any standing to exercise the statutory power of sale because it was not owed any money arising from the obligation of Plaintiffs to Beneficial Rhode Island due to the Loan Agreement.

5. Grant all other just and proper relief including but not limited to Attorney fees.

DONNA SPINO
LUCIEN SPINO


By their Attorney

November 27, 2020

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com

## COUNT 2

VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT BY RUSHMORE LOAN MANAGEMENT SERVICES, LLC

41.    Paragraphs 1-40 are incorporated by reference.

42.    The principal business purpose of Rushmore is the collection of debts using the mails and telephone.

43.    Rushmore regularly attempts to collects debts alleged to be due other parties.

44.    Rushmore is a debt collector and is the loan servicer for Plaintiffs' mortgage.

45.    The principal business purposes of Rushmore is not the enforcement of security interests.

46.    Rushmore at all the times referenced in this complaint and previously collected mortgage payments from Plaintiffs and other mortgagors, paid taxes from escrow proceeds to municipal tax collectors and paid property insurance payments due to insurance companies from escrow which it maintained for Plaintiffs and other mortgagors.

47.    Rushmore, as part of its loan servicing business, determined the amount of escrow needed for this mortgage loan account for Plaintiffs and other mortgagors.

48.     Rushmore, as part of its loan servicing business, provides loss mitigation for homeowners and the owners of the mortgage notes, taking and evaluating loan modifications.

49.     Rushmore, as part of its loan servicing business, ordered through its electronic system of record property inspections for properties such as that of the Plaintiffs.

50.     At the time that Rushmore commenced servicing Plaintiffs' mortgage, they were  in default and Rushmore treated this loan as if it were in default.

51.     Plaintiffs' loan with Beneficial  was a consumer loan for the purchase of a single family  residential home for the Plaintiffs.

52.     Rushmore is a debt collector as defined by 15 USC 1692 et seq. and since November 28, 2019 has committed several violations of the Fair Debt Collection Practices Act ("FDCPA") and is liable to the Plaintiffs for compensatory damages, statutory damages, and attorney fees and costs for violations.

53.     Rushmore has used unfair and unconscionable means to collect or attempt to collect a debt against the Plaintiffs.

54.     Rushmore, through its attorney, has threatened to commence to commence a non-judicial foreclosure to effect dispossession of the Plaintiffs

11

of their property even though Rushmore and MTGLQ had no present right to possession of the property claimed as collateral through an enforceable security interest.

55.    Rushmore also made a threat to take legal action which could not legally be taken, namely exercise the statutory power of sale and seek a deficiency judgment against the Plaintiffs in the event that the foreclosure sale will be insufficient to cover the amount due on the loan.

56.    Specifically it stated, through its attorney, by the letter dated January 30, 2020  that a Mortgage Foreclosure sale of the Plaintiffs' property would occur on  March 24, 2020.

57.    The threat to conduct a Mortgage Foreclosure Sale on March 24, 20200 was a deceptive action on the part of Rushmore due to MTGLQ not being the owner of the note.

58.    Each of these actions of Rushmore was a violation of 15 U.S.C. 1692e(5).

59.    The facts alleged in this complaint establish that MTGLQ did not have the present right to possession of the property claimed as collateral through an enforceable security interest due to the fact that the obligation referenced in the note was not transferred to MTGLQ because the Loan Agreement was not a negotiable instrument.

60. As alleged above, Rushmore violated 15 U.S.C 1692e(5) by threatening to take legal action which it could not take on behalf of MTGLQ.

61. Rushmore also violated section 1692e of the FDCPA by using false deceptive and misleading representations or means in connection with the collection of this alleged debt.

62. Rushmore made false representations regarding the character and legal status of the debt, namely that MTGLQ was holder of the Loan Agreement and that MTGLQ could exercise the statutory power of sale.

63. All the actions of Rushmore, alleged in this complaint, were designed to compel the Plaintiffs to pay monies to Rushmore on behalf of MTGLQ, individually and through its attorney, on behalf of the alleged owner of the Loan Agreement under the false threat of foreclosure of their property unless they made such a payment to Rushmore, through its attorney on behalf of the entity, which claimed to own the loan agreement.

64. 15 U.S.C. § 1692(f) provides that a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

65. 15 U.S.C. § 1692(d) provides that a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

66. Rushmore violated 15 U.S.C. § 1692(f) because its conduct as outlined herein constitutes an unconscionable means to collect or to attempt to collect a debt.

67. Rushmore violated 15 U.S.C. § 1692(d) by employing an unfair and unconscionable means to collect a debt.

68. Rushmore conduct has caused Plaintiffs to suffer great emotional distress driven by the fear that they might lose their property and residence which has resulted in loss of sleep, anxiety, depression, and embarrassment.

69. Rushmore's conduct was outrageous, willful, and wanton, and it showed a reckless disregard for Plaintiffs' rights.

70. The Plaintiffs have incurred actual damages as a result of the violations of the FDCPA.

71. Plaintiffs have suffered emotional damages for embarrassment and humiliation by the advertising of a foreclosure of their home.

72. They have lost sleep worrying about the foreclosure sale.

73. They have suffered emotional distress due to these actions.

74. Due to their concern over the foreclosure sale, they have not engaged in their usual activities and have incurred damages in loss of enjoyment of life.

75. Their mortgage loan account has been charged unreasonable fees and costs arising from this attempted sale in the amount of $1758.96.

76. Their credit scores have been diminished by the threat to foreclose on their property because Rushmore has reported this loan in foreclosure.

WHEREFORE, Plaintiffs demand that Judgment be entered against Rushmore for the following relief:

A. Judgment against Rushmore for actual damages, and statutory damages of $1,000.00 for each violation of the FDCPA.

B. Legal fees for the prosecution of this action.

C. For all other just and proper relief.

DONNA SPINO
LUCIEN SPINO
By their Attorney

November 27, 2020

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com

Plaintiffs demand a Trial by Jury

Case 1:20-cv-00123-JJM-DDA Document 22 Filed 11/30/20 Page 16 of 16 PageID #: 313