# EXHIBIT A

# MORTGAGE

INST# 00004675
BK: 1482 PG: 249

Return To:
Records Processing Services
577 Lamont Road
Elmhurst, IL 60126

☐ **IF BOX IS CHECKED, THIS IS AN OPEN-END MORTGAGE TO SECURE PRESENT AND FUTURE LOANS UNDER CHAPTER 25 OF TITLE 34 OF THE GENERAL LAWS.**

THIS MORTGAGE is made this __25TH__ day of __SEPTEMBER__, 20 __07__, between the Mortgagor,
LUCIEN M SPINO AND DONNA M. SPINO, HUSBAND AND WIFE

(herein "Borrower"), and Mortgagee BENEFICIAL RHODE ISLAND INC.
a corporation organized and existing under the laws of __DELAWARE__ whose address is
1910 DIAMOND HILL RD, DIAMOND HILL PLAZA, WOONSOCKET, RI 02895
(herein "Lender"). The address listed above is for all purposes, including the receipt of written notices under chapter 25 of Title 34 of the General Laws.
The following paragraph preceded by a checked box is applicable.

☒ WHEREAS, Borrower is indebted to Lender in the principal sum of $ __478,988.44__,
evidenced by Borrower's Loan Agreement dated __SEPTEMBER 25, 2007__ and any extensions or renewals thereof (including those pursuant to any Renegotiable Rate Agreement) (herein "Note"), providing for monthly installments of principal and interest, including any adjustments to the amount of payments or the contract rate if that rate is variable, with the balance of the indebtedness, if not sooner paid, due and payable on __SEPTEMBER 25, 2037__;

☐ WHEREAS, Borrower is indebted to Lender in the principal sum of $ _____, or so much thereof as may be advanced pursuant to Borrower's Revolving Loan Agreement dated _____ and extensions and renewals thereof (herein "Note"), providing for monthly installments, and interest at the rate and under the terms specified in the Note, including any adjustments in the interest rate if that rate is variable, and providing for a credit limit stated in the principal sum above and an initial advance of $ _____;

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon, (including any increases if the contract rate is variable), the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described property located in the County of __PROVIDENCE__ State of Rhode Island:

THAT CERTAIN LOT OR PARCEL OF LAND SITUATED ON THE
NORTHERLY SIDE OF RED CHIMNEY DRIVE, LINCOLN, RHODE ISLAND,
LAID OUT AND DESIGNATED AS LOT SIX (6) ON THAT PLAT
ENTITLED JENCKES HILL ESTATES SECTION 4 DEVELOPED BY JOHN
P. DESPRES DRAWN BY EARL R. MARSH ASSOC. AUGUST 1981, SCALE
1 INCH = 50 FEET RECORDED IN THE LAND EVIDENCE RECORDS FOR
THE TOWN OF LINCOLN ON PLAT CARD NO. 363.

SUBJECT TO RESTRICTIONS AND EASEMENTS OF RECORD.

TAX MAP OR PARCEL ID NO.: 44-166

which has the address of __16 RED CHIMNEY DR.__                   __LINCOLN__
                              (Street)                              (City)

Rhode Island __02865__                   (herein "Property Address");
            (Zip Code)

05-01-06 MTG                                                        RI001121

Scanned with CamScanner

-2-

INST: 00004675
BK: 1482 PG: 250

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property."

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest (including any variations in interest resulting from changes in the Contract Rate that may be specified in the Note) on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 12. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2 or as may be required by the Note and/or applicable law, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 7. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 7 and pay such amount and Borrower shall then be obligated under Section 7 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 12 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 35000), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this security instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the loan does not qualify as a "federally related mortgage loan" under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the

06-01-06 MTG

RI001122

Scanned with CamScanner

Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender .

**4. Prior Mortgages and Deed of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by the Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortage.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Contract Rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The applicable law contained in the Note shall control. Where no applicable law is contained therein, the state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisi [redacted] licting provision, and to

Scanned with CamScanner

BK1 1482 PG1 343

-4-

this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage, if requested, at the time of execution or after recordation hereof.

15. **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. **Transfer of the Property.** If Borrower sells or transfers all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Mortgage, (b) a transfer by devise, descent, or by operation of law upon the death of a joint tenant, (c) the grant of any leasehold interest of three years or less not containing an option to purchase, Borrower shall cause to be submitted information required by Lender to evaluate the transferee as if a new loan were being made to the transferee. Borrower will continue to be obligated under the Note and this Mortgage unless Lender releases Borrower in writing.

If Lender does not agree to such sale or transfer, Lender may declare all of the sums secured by this Mortgage to be immediately due and payable. If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 12 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed or delivered within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Acceleration; Remedies.** Upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a Court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorney's fees.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, as provided in paragraph 12 hereof. Lender shall publish the notice of sale and the Property shall be sold in the manner prescribed by applicable law. Lender or Lender's designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all reasonable costs and expenses of the sale, including but not limited to, reasonable attorneys' fees and costs of title evidence; (b) to all sums secured by this Mortgage; and (c) the excess, if any, to the person or persons legally entitled thereto.

18. **Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to the earlier to occur of (i) the fifth day before sale of the Property pursuant to the power of sale contained in this Mortgage or (ii) entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

(THIS SPACE INTENTIONALLY LEFT BLANK)

05-01-06 MIG

RI001124

Scanned with CamScanner

-5-

19. **Assignment of Rents; Appointment of Receiver.** As additional security here under, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender shall be entitled to have a receiver appointed by a court to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by the Receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Mortgage. Receiver shall be liable to account only for those rents actually received.

20. **Release.** Upon payment of all sums secured by this Mortgage, this Mortgage shall become null and void and Lender shall discharge this Mortgage.

21. The Note provides for payment by Borrower of loan fees or "points." If the Note is prepaid in full, the loan fees or "points" shall not be subject to any refund.

22. **Arbitration Rider to Note.** The Arbitration Rider attached to and made a part of the Note is hereby incorporated by reference and made a part of this Mortgage.

<div align="center">

**REQUEST FOR NOTICE OF DEFAULT**
——————————— **AND FORECLOSURE UNDER SUPERIOR** ———————————
**MORTGAGES OR DEEDS OF TRUST**

</div>

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

**THIS MORTGAGE IS MADE UPON THE STATUTORY CONDITIONS AND WITH THE STATUTORY POWER OF SALE.**

Borrower has paid the following brokerage fees, loan fees, points, finder's fees, origination fees or similar charges in connection with the loans secured by this Security Instrument:

Origination - Discount Fees (Points)                                 $   12,600.00

As provided in R.I.G.L. Sections 34-23-6, none of these fees will be refunded in the event the loan is prepaid in whole or in part.

06-01-05 MTG

RI001125

**Scanned with CamScanner**

-6-

INST: 00004675
BK: 1482 PG: 254

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

_Lucien M. Spino_
LUCIEN M SPINO                    -Borrower

_Donna M. Spino_
DONNA M SPINO                     -Borrower

STATE OF RHODE ISLAND. ____PROVIDENCE____                    County ss:

On this __25th__ day of __SEPTEMBER__, 20 __07__, in __WOONSOCKET__ in said County, before me personally appeared __LUCIEN M SPINO AND DONNA M SPINO__ each and all to me known and known to me to be the person(s) executing the foregoing instrument and acknowledge said execution to be __THEIR__ free act and deed.

_Frank Saccoccio_
FRANK SACCOCCIO-PUBLIC NOTARY #43467
                                           County ss: my com __5/8/09__

STATE OF RHODE ISLAND. _____                    County ss:

On this _____ day of _____, 20 ____, in _____ in said County, before me personally appeared _____ each and all to me known and known to me to be the person(s) executing the foregoing instrument and acknowledge said execution to be _____ free act and deed.

_____    (Space Below This Line Reserved For Lender and Recorder)    _____

RECEIVED FOR RECORD
LINCOLN, RI
Oct 01, 2007 09:34:12A
BOOK: 1482 PAGE: 249
KAREN D. ALLEN
TOWN CLERK

08-01-06 MTG                                                                       RI001126

# EXHIBIT B

# LOAN AGREEMENT
## Including Truth-in-Lending Disclosure

| | |
|---|---|
| **Lender:** (Called "We", "Us", "Our")<br>BENEFICIAL RHODE ISLAND INC.<br>1910 DIAMOND HILL RD<br>DIAMOND HILL PLAZA<br>WOONSOCKET, RI 02895 | |
| **Borrowers:** (Called "You", "Your")<br>LUCIEN M. SPINO<br>DONNA M. SPINO<br>16 RED CHIMNEY DR<br>LINCOLN, RI 02865 | |
| Date of Loan: 09/25/2007 | Loan Number: ███████████ |

In this agreement, "you", "your" mean the Borrower(s) who signs this agreement. "We", "us" and "our" refer to the Lender. This agreement covers the terms and conditions of your loan. It is important to us that you clearly understand the features of your loan. Please read this agreement carefully, and ask us any questions you may have.

### Truth-in-Lending Disclosure

| ANNUAL PERCENTAGE RATE<br><br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br><br>The dollar amount the credit will cost you. | Amount Financed<br><br>The amount of credit provided to you or on your behalf. | Total of Payments<br><br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 9.797% | $982,187.56 | $466,488.44 | $1,448,676.00 |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due ("e") |
|---|---|---|
| 1 | $4,024.10 | 10/25/2007 |
| 359 | $4,024.10 | Day 25 of each month thereafter. |
| | | |

* S739734CAH - 95 - CET - 9 - 000 - 0315LE - Z - 1 - O ** SPINO ^ ORIGINAL

**Assumption:** Someone buying your home cannot assume the remainder of the mortgage on the original terms.

**YOU ARE GIVING US A SECURITY INTEREST IN THE REAL PROPERTY AS DESCRIBED IN THE MORTGAGE AND LOCATED AT:**

16 RED CHIMNEY DR
LINCOLN, RI 02865

| | |
|---|---|
| **Late Charge** | If your monthly installment is not paid in full within 15 day(s) after it is due, you will be charged a late charge equal to 5% of the full amount of the monthly installment. |
| **Prepayment** | You may prepay your loan in full or in part at any time. If you pay off your loan early, you may have to pay a penalty and you will not be entitled to a refund of that part of the Finance Charge consisting of any prepaid finance charges. |

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**The Settlement Statement provides your disbursements and the itemization of the Amount Financed.**

---

## ABOUT THE SECURITY:

| | |
|---|---|
| **Your Obligation to Insure** | You shall keep the structures located on the real property securing your loan insured against damage caused by fire and other physical hazards, name us as a loss payee and deliver to us a loss payable endorsement. If insurance covering the real property is canceled or expires while your loan is outstanding and you do not reinstate the coverage, we may obtain, at our option, hazard insurance coverage protecting our interest in the real property as outlined below. |
| **Real Property Taxes and Homeowners Insurance** | Homeowners Insurance covering fire and other hazards on the real property security is required, naming us as a loss payee for the term of your loan. You shall pay us on the day that monthly installments are due under this agreement, an additional sum (the "Funds") to be used to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the real property; (b) leasehold payments or ground rents on the real property, if any; (c) premiums for any and all insurance required by us under this agreement and the Mortgage ("Escrow Items"). You will pay us the Funds for Escrow Items unless we waive your obligation to pay the Funds for any or all Escrow Items. We may waive your obligation to pay us Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, you will be solely responsible for paying the amounts due for any Escrow Items directly and, if we require, you shall furnish us with receipts |

evidencing such payment within such time period as we may
reasonably require.

**Title Insurance**

Title insurance on the real property security is required, naming us
as a loss payee. You must purchase title insurance or its local
equivalent protecting our lien on the real property as a condition to
obtaining your loan. You may purchase title insurance from any title
insurance provider you choose that we reasonably believe provides
sufficient financial protection to us. You request such title insurance
and authorize us to deduct the costs of the title insurance from your
loan proceeds in order to pay the title insurance provider.

**Lender's Right to Place
Hazard Insurance**

You authorize us, at our option, to obtain hazard insurance coverage
on the real property in an amount not greater than the outstanding
balance of principal and interest on your loan or, if known to be less,
the replacement value of the real property, in the event that you fail
to maintain the required hazard insurance outlined above or fail to
provide adequate proof of its existence. You authorize us to charge
you for the costs of this insurance. We may choose to add the
insurance charges to the unpaid balance of your loan, which will
accrue interest at the Contract Rate, or bill you for the annual
premium on a periodic basis. The addition of the insurance charges
due might increase the amount of your final monthly installment.
The cost of lender-placed hazard insurance might be higher than the
cost of standard insurance protecting the real property. The
lender-placed insurance will not insure the contents of the real
property or provide liability coverage. The insurance might not be
the lowest cost coverage of its type available and you agree that we
have no obligation to obtain the lowest cost coverage. We or an
affiliated company might receive some benefit from the placement
of this insurance and you will be charged for the full cost of the
premium without reduction for any such benefit. If at any time after
we have obtained this insurance, you provide adequate proof that
you have subsequently purchased the required coverage, we will
cancel the coverage we obtained and credit any unearned premiums
to your loan.

---

## ABOUT YOUR LOAN REPAYMENT:

| | | | |
|---|---|---|---|
| SCHEDULED MATURITY DATE | 09/25/2037 | PREPAID FINANCE CHARGES | $12,500.00 |
| MONTHS OF CONTRACT | 360 | PRINCIPAL | $478,988.44 |
| CONTRACT RATE (per year) | 9.490% | | |
| AMOUNT FINANCED | $466,488.44 | | |

* S739734CAH - 95 - CET - 9 - 000 - 0315LE - Z - 3 - O ** SPINO ^ ORIGINAL

**Promise to Pay**

You agree to the terms of this agreement and promise to pay us the principal (Amount Financed plus prepaid finance charges consisting of Origination Fee/Points) plus interest which is computed at a rate of 9.490% (the "Contract Rate"). You agree to pay us in monthly installments as stated in the Payments provision of this agreement. You also agree to pay us: (a) other charges as provided in this agreement; (b) credit insurance charges, if any; (c) collection costs permitted by applicable law, including reasonable attorneys' fees otherwise due under your Mortgage and (d) any other charges reflected in your settlement statement.

**Interest**

Interest will be charged on the unpaid principal until the full amount of principal has been paid. You will pay us interest at a yearly Contract Rate of 9.490%.

The interest rate required by this provision is the rate you will pay both before and after any default as described in this agreement.

For any mortgage not in a first mortgage position, after the Scheduled Maturity Date, you will pay interest on any remaining balance at the interest rate of 18% per year.

**Payments**

**Time and Place of Payments**

You will pay us principal and interest by paying your monthly installments.

You will make your monthly installments to us on the same day of each month beginning on or about 10/25/2007. You will make these monthly installments every month until you have paid all of the principal and interest and any other charges described herein that you may owe under this agreement. Your monthly installments will be applied to interest before principal. If, on the Scheduled Maturity Date, 09/25/2037, you still owe amounts under this agreement, you will pay those amounts in full on that date, which amount will include interest at the then current Contract Rate or any such other rate as required by law.

You will make your monthly installments at the address shown on page one or at the address shown on your monthly billing statement or at a different place that we may give you.

**Amount of Monthly Installments**

Your monthly installments will be in the amount of $4,024.10, plus the amount of any optional insurance or funds for escrow you elected.

**Prepayment**

Subject to the prepayment penalty described below, you may prepay your loan in full or in part at any time. If you pay off your loan early, you may have to pay a penalty and you will not be entitled to a refund of that part of the Finance Charge consisting of any prepaid finance charges.

**Prepayment Penalty**

Your loan contains a prepayment penalty. If you prepay the entire outstanding balance of your loan at any time within 12 months of the Date of Loan, 09/25/2007, you agree to pay a prepayment penalty equal to 2.00 percent of the unpaid balance as of the payoff date. No prepayment penalty will be imposed: (a) if your loan is refinanced by another loan with us; (b) after 12 months; (c) if your loan is prepaid from the proceeds of any insurance; or (d) if we sue you.

**Late Charge**

If your monthly installment is not paid in full within 15 day(s) after it is due, you will be charged a late charge equal to 5% of the full amount of the monthly installment.

**Additional Charges**

You agree to pay any amounts actually incurred by us for services rendered in connection with the opening and servicing of your loan, as allowed by law. These amounts may include fees for appraisals, title examination, title insurance or its local equivalent, fees and taxes paid to public officials in connection with recording, releasing or satisfying the Mortgage and other taxes as shown in the Settlement Statement incorporated herein by this reference. You also agree to pay any other amounts incurred by us in connection with the servicing of your loan including any amounts that we may (but need not) pay or that are otherwise due under the Mortgage, incorporated herein by this reference.

**Default**

If you fail to make any monthly installment after it becomes due or fail to comply with the terms of the Mortgage, we may require that you pay us, at once and without prior notice or demand, the unpaid balance of your loan plus accrued interest and any applicable charges in this agreement as authorized.

**Security Interest**

You agree to give us a security interest in the real property as described in the Mortgage.

## ABOUT OUR RELATIONSHIP:

**Exchange of Information**

You understand and agree that we will call you from time to time to discuss your financial needs and any loan products that may be of interest to you as may be permitted by applicable law. For more information regarding our privacy practices, please refer to our Privacy Statement, which is included with your loan documents. You agree that the Department of Motor Vehicles (or your state's equivalent of such department) may release your residence address to us, should it become necessary to locate you.

**Credit Bureau Reporting**

If you fail to fulfill the terms of your loan, a negative report reflecting on your credit record may be submitted to a Credit Reporting Agency.

**Telephone Monitoring**

You agree that we may listen to and/or record telephone calls between you and our representatives for quality assurance purposes.

* S739734CAH - 95 - CET - 9 - 000 - 0315LE - Z - 5 - O ** SPINO ^ ORIGINAL

| | |
|---|---|
| **Insurance** | Credit insurance is optional. Any applicable insurance disclosures are included with this agreement and are incorporated herein by this reference. |
| **Alternative Dispute Resolution** | The terms of the Arbitration Rider signed by you as part of your loan transaction are incorporated herein by this reference. |
| **Applicable Law** | The terms and conditions of this agreement will be governed by Chapter 14.1, Title 19 of the General Laws of Rhode Island, entitled "Lenders & Loan Brokers." |
| | If this loan is a first mortgage, it is a federally related loan made at an agreed rate authorized by Section 501(a), Part A, Title V, Public Law 96-221, also known as Section 1735f-7(a), Title 12, United States Code. |

If any provision of this agreement is finally determined to be void or unenforceable under any law, rule, or regulation, all other provisions of this agreement will remain valid and enforceable. Our failure to enforce any provision(s) to this agreement shall not be deemed to constitute a waiver of such term(s). In order for any amendment to this agreement to be valid, it must be agreed to by you and us.

**You acknowledge that before signing this agreement, you have read and received this agreement which includes the Federal Truth-in-Lending disclosure and, as applicable, any other riders and/or disclosures incorporated herein by reference. By signing below, you agree to observe the terms and conditions of this agreement.**

Borrower: _____     Date: 9/25/07
LUCIEN M. SPINO

Borrower: _____     Date: 9/25/07
DONNA M. SPINO

Witness: _____

* S739734CAH - 95 - CET - 9 - 000 - 0315LE - Z - 6 - O ** SPINO ^ ORIGINAL

# ALLONGE TO NOTE

Service #: ██████████

Control Number: ████████████

Allonge to Note Dated: **9/25/07**

And Executed by: **LUCIEN M. SPINO AND DONNA M. SPINO**

Property Address: **16 RED CHIMNEY DR, LINCOLN, RI 02865-4610**

Loan Amount: **$478,988.44**

Pay to the order of: **LSF8 MASTER PARTICIPATION TRUST**

Without recourse: **BENEFICIAL RHODE ISLAND INC., A DELAWARE CORPORATION, ON BEHALF OF ITSELF AND AS SUCCESSOR BY MERGER TO BENEFICIAL MORTGAGE CO. OF RHODE ISLAND, BY CALIBER HOME LOANS, INC., AS ATTORNEY IN FACT**

By: _____

**Mindi Hernandez**

Title: **Authorized Signatory**

Prepared By: AMY D ANDERSON

CAALNG



BC#: ██████████

# ALLONGE TO NOTE

| | |
|---|---|
| Service #: | ▉▉▉▉  ▉▉▉▉▉▉ |
| Control Number: | ▉▉▉▉▉▉▉ |
| Allonge to Note Dated: | 9/25/07 |
| And Executed by: | LUCIEN M. SPINO AND DONNA M. SPINO |
| Township of: | LINCOLN TOWN |
| County of: | PROVIDENCE |
| Property Address: | 16 RED CHIMNEY DR, LINCOLN, RI 02865-4610 |
| Loan Amount: | $478,988.44 |
| Pay to the order of: | |

Without recourse:   **LSF8 MASTER PARTICIPATION TRUST, BY ITS TRUSTEE U.S. BANK TRUST, N.A., THROUGH CALIBER HOME LOANS, INC., AS ATTORNEY IN FACT FOR THE TRUSTEE**

By: _____

**Roy Lacey**

Title:   **Authorized Signatory**

Prepared By:  WHITNEY A STRINGER

CAALNG

# EXHIBIT C

Recording Requested By:
T.D. SERVICE COMPANY

INST: 00003312
BK: 1918 PG: 246

Prepared By:
T.D. Service Company
4000 W Metropolitan Dr Ste 400
Orange, CA 92868
(714) 543-8372, JENNIFER DAVIS-RIVERA

And When Recorded Mail To:
T.D. Service Company
4000 W Metropolitan Dr Ste 400
Orange, CA 92868
(714) 543-8372

_____ Space above for Recorder's use _____

Customer#: ▮▮   Service#: ▮▮▮▮   ▮▮▮▮▮▮▮▮▮ *
Loan#: ▮▮▮▮

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, BENEFICIAL RHODE ISLAND, INC., C/O CALIBER HOME LOANS, INC. 13801 WIRELESS WAY, OKLAHOMA CITY, OK 73134-0000, hereby assign and transfer to LSF8 MASTER PARTICIPATION TRUST, C/O CALIBER HOME LOANS, INC. 13801 WIRELESS WAY, OKLAHOMA CITY, OK 73134-2550, all its right, title and interest in and to said Mortgage in the amount of $478,988.44, recorded in the State of RHODE ISLAND, County of PROVIDENCE, Township of LINCOLN TOWN Official Records, dated SEPTEMBER 25, 2007 and recorded on OCTOBER 01, 2007, as Instrument No. 08904675, In Book No. 1482, at Page No. 249.
Executed by: LUCIEN M. SPINO AND DONNA M. SPINO, HUSBAND AND WIFE (Original Mortgagor).
Original Mortgagee: BENEFICIAL RHODE ISLAND INC.. Property Address: 16 RED CHIMNEY DR, LINCOLN, RI 02865-0680.

Date: OCT 2 0 2014
BENEFICIAL RHODE ISLAND INC., BY CALIBER HOME LOANS INC., F/K/A VERICREST FINANCIAL, INC., AS ITS ATTORNEY IN FACT

By: _____
Michelle Hess, Assistant Secretary

State of    CALIFORNIA    )
County of   ORANGE        ) ss.

On OCT 2 0 2014 _____, before me, L. Lawrence, a Notary Public, personally appeared Michelle Hess, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
Witness my hand and official seal.

_____
(Notary Name): L. Lawrence

L. LAWRENCE
Commission # 2077533
Notary Public - California
Orange County
My Comm. Expires Aug 9, 2018

RECEIVED FOR RECORD
LINCOLN, RI
Nov 13, 2014 10:31A
BOOK: 1918 PAGE: 246
KAREN D. ALLEN
TOWN CLERK

**Scanned with CamScanner**

Recording Requested By:
MERIDIAN ASSET SERVICES, INC.

Prepared By:
Caliber Home Loans, Inc.
13801 Wireless Way

Oklahoma City, OK 73134
(405) 608-2536, WHITNEY A STRINGER

And When Recorded Mail To:
Collateral Department
Meridian Asset Services, Inc.
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(405) 608-2535

INST: 00001032
BK: 2111 PG: 194

——————————— Space above for Recorder's use ———————————

Customer#: 1/1   Service#: ▆▆▆▆   ▆▆▆▆▆▆▆▆▆▆▆▆
Loan#: ▆▆▆▆

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, LSF8 MASTER PARTICIPATION TRUST, 13801 WIRELESS WAY, OKLAHOMA CITY, OK  73134-0000, hereby assign and transfer to MTGLQ INVESTORS, L.P., 6011 CONNECTION DRIVE, IRVING, TX  75039-0000, all its right, title and interest in and to said Mortgage in the amount of $478,988.44, recorded in the State of RHODE ISLAND, County of PROVIDENCE, Township of LINCOLN TOWN Official Records, dated SEPTEMBER 25, 2007 and recorded on OCTOBER 01, 2007, as Instrument No. 00004675, in Book No. 1482, at Page No. 249.
Executed by: LUCIEN M SPINO AND DONNA M SPINO, HUSBAND AND WIFE (Original Mortgagor).
Original Mortgagee: BENEFICIAL RHODE ISLAND, INC..

Date: FEBRUARY 26, 2018
LSF8 MASTER PARTICIPATION TRUST, BY ITS TRUSTEE U.S. BANK TRUST, N.A., THROUGH CALIBER HOME LOANS, INC., AS ATTORNEY IN FACT FOR THE TRUSTEE
Power of Attorney Recorded on 03/20/14 As Instrument # 00089409 In Book No. 10822 At Page No. 181 In the county of PROVIDENCE.

By: _____
    Roy Lacey, Authorized Signatory

State of     OKLAHOMA          )
County of    OKLAHOMA          ) ss.

On FEBRUARY 26, 2018 , before me, Amber Marcha, a Notary Public, personally appeared   Roy Lacey , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
Witness my hand and official seal.

_____
(Notary Name): Amber Marcha
My commission expires: 03/02/2020

RECEIVED FOR RECORD
LINCOLN, RI
Apr 10,2018 02:58P
BOOK: 2111 PAGE:   194
KAREN D. ALLEN
TOWN CLERK